## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **STATE OF KANSAS, by and through the KANSAS DEPARTMENT FOR CHILDREN AND FAMILIES,** <br><br> **Plaintiff,** <br><br> v. <br><br> **UNITED STATES, by and through HONORABLE ASHTON B. CARTER, Secretary of Defense, and HONORABLE JOHN McHUGH, Secretary of the Army** <br><br> **Defendant.** | Case No: _____ |

### COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTION

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

COMES NOW, the State of Kansas, by and through the Kansas Department for Children and Families, and submits this Complaint for Preliminary and Permanent Injunction, complaining of the United States of America, by and through the Honorable Ashton B. Carter, Secretary of Defense and the Honorable John McHugh, Secretary of the Army and would respectfully show the following:

### I. PARTIES

1. Plaintiff, State of Kansas, by and through the Kansas Department for Children and Families ("Kansas") is a Kansas state agency and the State Licensing Agency under the Randolph-Sheppard Vending Facility Act, 20 U.S.C. §§ 107 *et seq*. ("Act"). Under the Act and its implementing regulations, Kansas has a contract award priority to manage contracts pertaining to the operation of cafeteria services on Federal property through licensed blind vendors.

2. Defendant the United States of America is acting by and through Ashton B. Carter, Secretary of Defense, and John McHugh, Secretary of the Army. Both Secretaries Carter and McHugh are acting by and through Mr. Wilfredo Delatore, the Contracting Officer at Fort Riley assigned to the dining facilities at issue. Both Secretaries Carter and McHugh may be served by service of a copy of the summons and the instant Complaint upon the United States Attorney General, at Department of Justice, 950 Pennsylvania Avenue, N.W., Washington, DC, 20530 via certified mail, and delivering same to the United States Attorney for the District of Kansas at 500 State Avenue, Suite 360, Kansas, City, Kansas 66101 and the Contracting Officer, Wilfredo Delatore, at Fort Riley, Kansas, at Mission Installation Contracting Command, 1792 12th Street, Fort Riley, Kansas, 66442, via certified mail.

## II.   JURISDICTION

3. Jurisdiction is proper in this Court under 28 U.S.C. §§ 1331 (arising from the Randolph-Sheppard Vending Facility Act, 20 U.S.C. §§ 107 *et seq*. and 1346 and 5 U.S.C. §§ 701 *et seq*. (judicial review of federal agency action).

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391, in that a substantial part of the events giving rise to this action occurred at Fort Riley, Kansas, which is in this District.

## III.   NATURE OF THE CASE

5. The Randolph-Sheppard Act, 20 U.S.C. §§ 107 *et seq*. ("Act") was passed by Congress to provide blind persons with gainful employment and to enlarge their economic opportunities. In furtherance of these objectives, Congress mandated that all contracts for cafeteria operation services on Federal property give priority to blind vendors. Kansas is a Kansas state agency and the State Licensing Agency for Kansas under the Act. In accordance with the provisions of the Act, Kansas has contracted with the Army to provide cafeteria operation services, including Full

2

Food Service ("FFS") and Dining Facility Attendant ("DFA") services, at Fort Riley since September, 2006. Full Food services encompass all aspects of feeding the troops at Fort Riley including food preparation. Dining Facility Attendant services are similar, but may not include food preparation as many of those services are performed by uniformed personnel. Elliot Smith is Kansas' licensed blind vendor, who is currently providing these cafeteria operation services at Fort Riley. Kansas' contract with the Army is nearing its expiration. The Army has requested that the US AbilityOne Commission add the cafeteria services at Fort Riley to the Procurement List pursuant to the Javits-Wagner-O'Day Act. This action not only ignores the priority under the Act, but also precludes Kansas from even bidding for the contract. Kansas seeks preliminary and permanent injunctions to prevent this procurement which violates the requirements of the Act.

6. To resolve this dispute, the Act requires that Kansas request the Department of Education convene an arbitration panel to determine whether the Army can conduct the solicitation using procedures other than those required by the Act. Kansas has initiated this required arbitration process. Unless this Court enjoins further conduct of the Army's planned purchase of these services, including any attempts by the Army to place the cafeteria services at Fort Riley on the Procurement List, until the arbitration proceeding is concluded, Kansas will be irreparably harmed.

### IV.     FACTUAL AND PROCEDURAL BACKGROUND

7. The Randolph-Sheppard Vending Facility Act, 20 U.S.C. §§ 107 *et seq*. ("Act") was passed by Congress to provide blind personal with gainful employment and to enlarge their economic opportunities. In order to further these objectives, the Act mandates that all contracts pertaining to the operation of cafeterias on Federal property give priority to blind vendors. The

United States Department of Education is the Federal agency charged with implementing the Act and ensuring that all executive agencies comply with it.

8. Under the Act, each state has a State Licensing Agency appointed to establish vending facility programs for the blind, including training and licensing qualified vendors to manage cafeteria operation services on Federal property. The State Licensing Agency in the State of Kansas is Kansas Department of Children and Families.

9. Kansas contracts with Fort Riley to operate a cafeteria. Kansas then assigns a licensed blind manager to operate the cafeteria contract.

10. The Act allows the Army to directly negotiate with Kansas without competitive procurement. If direct negotiations are not conducted, then the Act requires the Army to conduct a procurement pursuant to the competitive provisions of the Act. If Kansas provides a proposal within a competitive range, and it is ranked among those proposals which have a reasonable chance of being selected for award, then Fort Riley must give the award priority to Kansas.

11. Fort Riley has consistently solicited cafeteria operation services, including both DFA and FFS services, since 2006 pursuant to the Act. Kansas' proposals have been within the competitive range, and it has constantly been awarded the contract for cafeteria operation services at Fort Riley. The current contract is almost entirely for DFA services, and it is being performed by Kansas through its licensed blind vendor, Elliot Smith. The current contract is set to expire August 31, 2015.

12. The new dining facilities contract of Fort Riley will be for DFA services. Kansas has been informed that the Army has requested that the US AbilityOne Commission add the cafeteria services at Fort Riley to a Procurement List pursuant to the Javits-Wagner-O'Day Act. This action will remove these services from public solicitation. Once the services are added to the

Procurement List, Fort Riley must purchase them from an organization designated by the US AbilityOne Commission.  No State Licensing Agency, including Kansas, can be such an organization.  Kansas requested that the Army comply with the Act on March 19, 2015, but the Army has not changed its position.  The Army seeks to exclude Kansas from competition for award of the contract for DFA services in direct contravention of the Act.  As Kansas does not qualify as an organization which can contract for services on the Procurement List, the Army has made Kansas ineligible to even compete for the follow-on contract for DFA services.

13.    The Army's actions are illegal.  The only options the Army has with respect to awarding a follow-on contract to the one Kansas currently performs for DFA services is to either enter into direct negotiations with Kansas or require Kansas to once again compete under the Randolph-Sheppard priority.  The Act takes precedence over all other award priority or preference programs, including the Javits-Wagner-O'Day Act.

14.    The successful performance of the current contract by Kansas through its licensed blind vendor demonstrates that a licensed blind vendor can provide the required cafeteria operation services at Fort Riley at a comparable price and comparable high quality when compared to other providers of such services.

15.    The Army cannot ignore the requirements of the Act by eliminating the right of a blind manager to compete for these cafeteria services pursuant to the Act.  The Army should therefore be enjoined from proceeding with any procurement or purchase of cafeteria services which does not comply with the Randolph-Sheppard Act, and instead should be required to procure follow-on DFA services for the military dining facilities at Fort Riley as required by the Act, including as ultimately determined pursuant to the arbitration initiated by Kansas.  The Act and its implementing regulations provide that all grievances of State Licensing Agencies, including

contesting a Federal agency's failure to comply with the Act, are to be determined by arbitration. Kansas has demanded arbitration, in compliance with the Act, seeking a determination that Fort Riley's actions violate the Act and cannot form the basis for a legal contract award.

## V.      RELIEF REQUESTED

16.     Kansas is entitled to preliminary and permanent injunctions prohibiting the Army's conduct of any procurement of cafeteria services until such time as the arbitration required by the Act is concluded.

17.     Deciding whether to grant a preliminary injunction requires the consideration of four factors: (1) Plaintiff's likelihood of success on the merits; (2) whether Plaintiff may suffer irreparable harm absent the injunction; (3) whether granting the injunction will cause harm to others; and (4) the impact of an injunction upon the public interest.  No single factor is dispositive.  District courts are to balance the four factors and not consider them prerequisites to the issuance of a preliminary injunction.

18.     Kansas is likely to prevail on the merits.  The Army has recently arbitrated whether DFA services are subject to the Act and lost, as noted by the Sixth Circuit Court of Appeals in a 2014 decision in *Kentucky v. United States, ex rel. Hagel,* 759 F.3d 588 (6th Cir., 1014), (a DoE arbitration panel ruled the Act applies to DFA services contract).

19.     The Army has also recently litigated whether DFA services are subject to the Act and lost a similar request for Preliminary Injunction in the United States District Court for the Western District of Texas, El Paso Division, *Harvey Johnson and State of Texas v. Hagel,* Case No. 3:14-cv-00317-DCG (see accompanying Exhibit 1).

20.     Kansas will suffer irreparable harm that cannot be compensated in money damages if the Army is permitted to go forward with its plans before the arbitration proceeding required by the

Act is concluded. Kansas and its licensed blind vendor will lose their status as incumbents as a result of the Army's violation of the Act. Loss of incumbent status constitutes irreparable harm. Kansas and its licensed blind vendor, will also suffer irreparable harm by being denied award priority that Congress established for them. The denial of this right cannot be fully compensated by money damages. Elliot Smith, a licensed blind vendor for whose benefit Congress passed the Act, will be deprived of his opportunity to have gainful employment during the time another contractor is permitted to perform any contract awarded pursuant to the illegal solicitation. Kansas will lose set-aside fees from the operation of the Fort Riley contract. As the Sixth Circuit in *Kentucky v. United States ex rel. Hagel,* found, sovereign immunity bars an award to a State Licensed Agency for monetary damages for a violation of the Act. Kansas and its blind vendor will have no recourse if they are not able to enjoin the Army from awarding a contract in connection with the cafeteria services at Fort Riley pending the outcome of the arbitration of the Act's applicability. In addition, public policy favors economic stability and opportunities for the blind, matters not compensable by monetary damages.

21. There will not be substantial harm to the Army or others during the time a preliminary injunction is in effect. Kansas can and will continue to provide all required DFA services until such time as the arbitration concludes and will do so under the terms of the current contract.

22. This does not prejudice the Army or require that the Army violate other procurement laws since the Act expressly permits the Army to enter into direct negotiations with Kansas to provide continued services. The impact on the public's interest is adverse only if a preliminary injunction is not issued. During the time an injunction is in place, the immediate "public", that is, the Army, will continue to receive the same services from Kansas that it currently receives. Benefits to the wider public would continue to be served during the time a preliminary injunction is in effect, as

the purposes of the Act to provide gainful employment for qualified blind vendors would continue to be fulfilled.

23. The only effect of granting a preliminary injunction will be to preserve the status quo pending the outcome of Kansas' arbitration with the Army. Thus, all the equities and other relevant factors weigh heavily in favor of granting the requested preliminary injunction. Kansas and its blind vendor have everything to lose if this relief is not granted, but the Army will lose nothing if the injunction is granted.

24. For the foregoing reasons, Kansas respectfully submits that no bond or security is necessary for the preliminary injunction to issue and request that such requirement under FED.R.CIV.P. 65 (c) be waived.

WHEREFORE, PREMISED CONSIDERED, KANSAS prays that a hearing be held on its request for a preliminary injunction, that a preliminary injunction be issued prohibiting the Army from conducting any procurement including making any award of contract in connection with cafeteria services at Fort Riley until such time as the arbitration proceeding required by the Act is concluded. Following the trial of this action, Kansas requests that this injunction be made permanent. Kansas also requests such other relief as this Court deems just and appropriate.

Respectfully submitted,

*/s/ Peter A. Nolan*
Peter A. Nolan, Texas Bar No. 15062600
Winstead PC
401 Congress Avenue, Suite 2100
Austin, TX 78701
Telephone:   (512) 370-2800
Facsimile:    (512) 370-2850
Email:   pnolan@winstead.com

*/s/ David Davies*

David W. Davies, Kansas Bar No. 13011
General Counsel
Office of the General Counsel
Kansas Department for Children and Families
555 SW Kansas, 6th Floor
Topeka, KS 66603
Telephone:   (785) 296-3967
Facsimile:   (785) 296-4960
Email:   David.Davies@dcf.ks.gov

**ATTORNEYS FOR STATE OF KANSAS, by and through the KANSAS DEPARTMENT FOR CHILDREN AND FAMILIES**

4836-3291-8821v.1
25207-1 7/7/2015